UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NICHOLAS CUTTING and KATHRYN CUTTING,<br><br>Plaintiffs,<br><br>v.<br><br>YOKE INDUSTRIAL CORP., et al.,<br><br>Defendants. | CASE NO. C20-5346 BHS-JRC<br><br>ORDER |

This matter comes before the Court on United States Magistrate Judge J. Richard Creatura's Report and Recommendation ("R&R"), Dkt. 71, and the parties' Objections to the R&R, Dkts. 72, 73, 74. Plaintiff Nicholas Cutting[1] fell off a roof in 2017, sustaining injuries. He claims he was fastened to a rope lifeline system sold and manufactured by Defendants. The lifeline failed to stop his fall. Cutting sued alleging that the product lacked an appropriate warning, that the product featured a design defect, and that the defect caused his fall.

---

[1] Nicholas Cutting's wife, Kathryn Cutting, is also a plaintiff in this case. The Court refers to them in the singular as "Cutting" for clarity and consistency.

ORDER - 1

## I. BACKGROUND

Defendant Yoke Industrial Corp. manufactures and sells various rope grabs—a device designed to stop a user from falling down a rope to which he is attached. Dkt. 48 at 6. Defendant Werner Co. manufactures and sells various fall protection systems, some of which include Yoke manufactured rope grabs. *Id.* Defendant Home Depot USA Inc., a retailer, sells some of Werner's products, including the one at issue in this case. *Id.*

In 2017, non-party Jeffrey Gerbing hired Cutting to build an RV garage. Dkt. 48 at 5. Cutting was to install roof sheathing on the garage and to perform that work, he purchased a fall protection system, the UpGear K211201, from Home Depot. *Id.* at 6. Werner designed and manufactured the UpGear and Yoke supplied the product's rope grab, model N-602. *Id.*; Dkt. 54 at 3. The UpGear is designed to be an "All-in-One" rope lifeline system intended to prevent a "freefall." Dkt. 48 at 6. While working on Gerbing's RV garage roof, Cutting slipped and fell. *Id.* at 8. He claims he was wearing the UpGear at the time and that it failed to prevent his fall. *Id.* at 7–8. While he says he does not specifically remember grabbing the rope grab during the fall, he claims that he was using the UpGear as instructed, that he reached for the rope grab, and that the UpGear failed to stop him from falling to the ground. *See, e.g.*, Dkt. 49-1 (Cutting Dep.) at 123:20–124:6; 153:19–154:3 Cutting's fall caused a spinal fracture requiring surgery. Dkt. 48 at 8.

Fall protection systems like the one Cutting used are designed with a rope connected to an anchor. A rope grab is attached to the rope on one side and to a lanyard on the other. Dkt. 48 at 7. The lanyard has a clip on the end and the user is hooked to the lanyard clip with a snaphook. *Id.* The UpGear is shown in the pictures below.



*Id.* at 6.

Rope grabs can be manual or trailing. With manual rope grabs, the user can squeeze the grab to move along the rope. *Id.* at 6. If the user falls, the manual rope grab locks in place on the rope in response to the user's weight. *Id.* at 6–7. The UpGear is a manual rope grab. Dkt. 54 at 4. Trailing rope grabs trail the user and, when the grab is behind the user, the grab is in an open position which allows the user to move along the rope without the grab locking. Dkt. 54 at 8. If the user falls, similar to the manual rope grab, the grab locks in place on the rope in response to the pull of the user's weight. Trailing grabs now contain an "anti-panic" feature added in response to a known hazard called the "death grip." *Id.* Around 2007–2010 the industry discovered that this hazard was present when a user fell while using a trailing rope grab and naturally responded by trying to grab onto the rope. *Id.* at 7–8. If the user grabbed the rope grab itself, the grab would remain open and fail to lock in place on the rope, resulting in a free fall. *Id.* at 8.

Defendants explain that one key difference between manual and trailing rope grabs is that, whereas trailing rope grabs are in an open position when the user is in front

of the grab, manual rope grabs are never open unless the user squeezes the grab in an upward motion. *Id.* According to Defendants, for this reason, manual rope grabs do not have the same "death grip" hazard as trailing rope grabs. *Id.* This frames a central factual issue in this case: whether it is possible that Cutting grabbed the rope grab during his fall and moved it into, or held it in, an open position, causing him to free fall to the ground.

While Cutting claims the UpGear's failure caused him to fall and sustain injuries, Defendants argue that Cutting's version of events is impossible. Their experts opine that one of three alternative factual scenarios must have actually taken place: (1) Cutting was not wearing the UpGear at the time of his fall; (2) Cutting's harness was not connected to the lanyard at the time of his fall; or (3) Cutting left too much slack in the rope. Dkt. 54 at 18. Defendants believe that the most likely scenario is that Cutting was not wearing the UpGear at the time of his fall. *Id.* Cutting argues he always wore the UpGear while working on the roof and that he was wearing and using it properly at the time. Dkt. 61 at 6–7. He also points to other evidence, such as Gerbing's statements that, every time he saw Cutting working on the roof, Cutting was wearing the UpGear. *Id.*

Cutting sued Defendants[2] alleging violations of Washington's Product Liability Act ("WPLA"), RCW 7.72.030–.040, negligence, and loss of consortium. Dkt. 1. Cutting seeks general and special damages, costs and fees, prejudgment interest, and punitive and exemplary damages. *Id.* at 11.

---

[2] Cutting initially sued Werner and Home Depot under cause number 20-cv-5163 BHS. Shortly after, Cutting sued Yoke Industrial Corp. and Yoke, Inc., under the instant cause number. The parties stipulated to consolidate the cases. Dkts. 25, 29.

ORDER - 4

The parties now all move for summary judgment, except Defendant Yoke Niagara. Dkts. 48, 54, 55. Each side attacks the reliability of the others' witnesses and claims that without the opposing party's expert witness testimony, no material issue of fact remains. Werner and Home Depot also move to exclude Cutting's expert witnesses, Joellen Gill and Jeremy Bauer, Dkt. 56, and Cutting moves to strike defense expert witness David Lough's declaration and to strike defense expert witness Keith Schippers' "three potential scenario" theory, Dkt. 59 at 15–20.[3]

Judge Creatura denied Werner and Home Depot's motion to exclude Bauer, noting, however, that Bauer is not qualified to testify to ultimate conclusions of law. Dkt. 71 at 9. He denied in part and granted in part Werner and Home Depot's motion to exclude Gill, concluding that Werner and Home Depot challenged only Gill's qualifications to testify to the existence of a death grip hazard in the rope grab. *Id.* at 10. He agreed Gill cannot testify to the existence of a hidden hazard but ruled that the rest of her testimony is unchallenged and therefore admitted. *Id.* at 12.

The R&R denied Cutting's motion to strike both defense experts' testimony. Dkt. 71 at 12–15. It concluded that it is proper for Lough to testify only to certain portions of a report he co-authored with Schippers. *Id.* at 12–13. It further concluded that Schippers is qualified to render his opinions in this case and that his "scenario" opinions are properly

---

[3] Much of the briefing in this case copies exactly from other briefing. For example, much of Home Depot and Werner's briefing mirrors Yoke's. For brevity, the Court does not pincite to each instance of a quote or statement.

based on his experience and the evidence in this case. *Id.* at 13–15. Cutting does not object to the R&R's conclusions on his motion to strike.

Following his conclusion that all of the experts' testimony is admissible, at least in part, Judge Creatura recommended the Court deny the parties' motions for summary judgment, concluding that the experts' conflicting opinions create disputed issues of material fact. The parties all lodged objections to the R&R which are discussed below.

## II. DISCUSSION

**A. Motions to Strike and Exclude**

Magistrate judges may hear and decide non-dispositive matters via written order. Fed. R. Civ. P. 72(a). "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

Cutting moved to strike defense expert witness Lough's declaration and some of defense expert witness Schipper's opinions. Dkt. 59 at 15–20. The Magistrate Judge denied that motion and Cutting did not object. The Magistrate Judge's ruling is therefore final and Cutting's Motion to Strike is DENIED.

Werner and Home Depot move to exclude Cutting's expert witnesses, Dr. Jeremy Bauer and Joellen Gill, arguing that the witnesses do not have any non-litigation experience with fall protection systems, that they have never previously been involved in fall protection cases, and that they used unreliable, "subjective methodologies" to reach their results. Dkt. 56. Cutting argues that all of Werner and Home Depot's arguments go toward the weight of the experts' testimony, not to the admissibility of that testimony,

and that Bauer and Gill used reliable methodologies in forming their respective opinions. Dkt. 62. Cutting further argues that Bauer and Gill's experiences and education render them qualified to testify as experts in this case. *Id.* Werner and Home Depot reply that Gill reached a speculative opinion based on incomplete information, that Bauer did not conduct any reliable testing on the robe grab, and that neither Gill nor Bauer have authored any peer-reviewed articles on this issue. Dkt. 69.

As to Dr. Bauer, the R&R concluded that, based on his education and experience, Bauer is qualified to render opinions concerning Cutting's fall, citing as examples opinions on Cutting's position on the roof, his movements as he fell, and whether the rope grab can be defeated by grabbing the rope grab or above it during a fall. Dkt. 71 at 7. The R&R further concluded that Bauer is not qualified to render an opinion on any ultimate issue of law. *Id.* Finally, the R&R concluded that Werner and Home Depot's arguments regarding Bauer's methodology go toward the weight of his opinions and not their reliability. *Id.* at 9. Thus, Werner and Home Depot are free to cross-examine Bauer and the jury can reach its own conclusions regarding the weight to assign his opinions. *Id.*

Werner and Home Depot object to the R&R's conclusion that Bauer is qualified, arguing that the Magistrate Judge misstated that Bauer has a background in mechanical engineering. Dkt. 73 at 2–3. They urge this Court to review the Magistrate Judge's ruling de novo. *Id.* Further, Werner and Home Depot argue that Bauer's opinions are based on an erroneous factual scenario: Bauer opines that Cutting could have grabbed the rope grab if the lanyard was slack, but Cutting himself agreed that the lanyard was taut. *Id.* at 3. Yoke lodges largely the same objections. *See* Dkt. 72 at 4–5.

ORDER - 7

In response, Cutting correctly points out that Defendants move the Court to apply the wrong standard of review to the Magistrate Judge's ruling on the motion to exclude. Dkt. 76 at 6. He also argues that the Magistrate Judge's ruling as to Bauer was correct because he testified in his deposition that he "possesses significant training in mechanical engineering." Dkt. 76 at 7. Further, Cutting argues that, although he testified that the rope was taut at one point, it was slack when he reached out to arrest his fall. *Id.*

As an initial matter, it is unclear why Yoke objected to the R&R's ruling on Werner and Home Depot's motion to exclude. Yoke did not join in that motion, never moved to exclude Cutting's expert witnesses itself, and is not a party to the motion. Yoke's objections to the R&R's rulings on the motion to exclude are improper and will therefore not be considered.[4]

Additionally, Werner and Home Depot do not provide any support for this Court reviewing de novo the R&R's rulings on its motion to exclude. The motion is non-dispositive in nature and therefore the proper standard of review is clear error. Fed. R. Civ. P. 72(a).

The Magistrate Judge did not commit clear error in admitting Bauer's testimony aside from his conclusions on ultimate issues of law. There was no error in the Magistrate Judge's statement that Bauer has "educational experience in mechanical engineering" as Bauer testified to as much. *See* Dkt. 64 at 3 ("My formal education included coursework in mechanical engineering . . . ."). Further, it seems Werner and Home Depot take that

---

[4] Yoke also responded to Cutting's objections regarding Gill's exclusion. That response is similarly improper and will not be considered.

ORDER - 8

statement out of context. The Magistrate Judge pointed out that background only to opine that Bauer's educational experience in mechanical engineering, along with his experience in math and physics, contributes to his understanding of "basic scientific principles." Dkt. 71 at 7.

Werner and Home Depot's allegation that Cutting's factual scenario is impossible supports a conclusion that there are disputed factual issues in this case. While it is true that Cutting testified that the rope was taut at one point, Bauer's testimony suggests that there was slack in the rope during the fall. Defendants will have the opportunity to cross examine Bauer and Cutting, along with other witnesses, as to this issue at trial. They may also present conflicting evidence. It is not a reason, however, to exclude Bauer's testimony. As to Bauer's testimony, the R&R is ADOPTED and the parties' objections are OVERRULED. Werner and Home Depot's Motion to Exclude Bauer's testimony is GRANTED in part and DENIED in part. Bauer may testify to all of his conclusions except for those going to ultimate conclusions of law.

As to Gill, the R&R first concludes that Werner and Home Depot challenge only Gill's opinion on the existence of a hidden hazard in the product at issue. Dkt. 71 at 10. The R&R agrees with Werner and Home Depot that Gill's opinion on hidden hazards, specifically that there is a fall hazard in manual rope grabs without anti-panic features, is based solely on a comparison with trailing rope grabs and is thus unreliable under *Daubert*. *Id.* at 11. The R&R therefore grants Werner and Home Depot's motion to exclude "Gill's testimony and opinions to the extent that she opines as to the existence of a death grip hazard in the product at issue." *Id.* at 12.

Werner and Home Depot object to the R&R's failure to exclude Gill's failure to warn opinion, arguing that it is irrelevant and prejudicial because there is no evidence of a "panic grab" having occurred in this or any other case. Dkt. 73 at 3. Cutting argues that the R&R was not clearly erroneous in concluding that Werner and Home Depot had failed to raise any other exclusion arguments as to Gill. Dkt. 76 at 8. He further argues that there is evidence that he grabbed the rope during his fall, including his own testimony, the homeowner's testimony, and the expert conclusion that the fall in question could not have happened unless Cutting grabbed the rope. *Id.*

Cutting objects to the R&R's exclusion of Gill's testimony regarding the "existence of the death grip hazard." Dkt. 74 at 10 (internal quotation marks omitted). He argues that Gill should be able to testify to the existence of the hazard as well as "that she herself inspected the subject product and, in her inspection, verified that the rope grab indeed moves down the rope lifeline when grabbed without releasing the cam locking mechanism." *Id.* at 11. Cutting persuasively argues that Gill is qualified to advance such an opinion and that her opinions are based on proper scientific foundation. *Id.* He argues that Gill's opinions are more reliable and scientific than Schippers' and she should therefore be "permitted to opine on the existence of the 'death grip' hazard in the subject product." *Id.* at 12–13. Cutting moves the Court, in the alternative, to clarify that all other opinions from Gill relating to her analysis of the hazards of the subject product are admissible. *Id.* at 13. Werner did not respond to Cutting's objections.

Gill's testimony is based on more than just a comparison with a trailing rope grab. She also relies on her own professional inspection of Cutting's UpGear and a newly

1 purchased UpGear. The Court concludes, based upon the limited current record, that the
2 Magistrate Judge's recommendation to strike Gill's opinion regarding the existence of the
3 death grip hazard was clearly erroneous; there remains some doubt as to whether, after a
4 *Daubert* hearing in which the issue is fully developed, the Court will allow this testimony
5 at trial. Therefore, the Court *sua sponte* requires a hearing on this issue alone.

6       The Court further concludes that it was not clear error for the R&R to rule on only
7 this part of Gill's testimony. Werner and Home Depot's motion asserts only that Gill
8 "summarily concluded that the fall protection industry was/is aware of the possibility of a
9 panic grab of a rope grab and therefore all rope grabs should have that feature." Dkt. 56
10 at 5. The R&R therefore reasonably concluded that Werner and Home Depot intended to
11 challenge only that part of her testimony. The Court need not consider a new argument
12 raised for the first time in objections to an R&R, though it has discretion to consider such
13 an argument. *Brown v. Roe*, 279 F.3d 742, 745–46 (9th Cir. 2002) (rejecting the Fourth
14 Circuit's holding that a district court must consider new arguments raised for the first
15 time in an objection to an R&R). In this case, however, the Court declines to exercise
16 such discretion. Werner and Home Depot are large companies represented by able
17 counsel and they had ample opportunity to raise this argument in their initial motion.

18       Even if the Court were to consider the new argument, it would conclude that Gill's
19 failure to warn testimony is not flawed in the way described by Home Depot and Werner.
20 There is disputed evidence regarding whether Cutting grabbed the rope grab in this case.
21 Again, Home Depot and Werner will have the opportunity to cross-examine witnesses
22

and to present conflicting evidence on this issue. It is not a proper reason to exclude the testimony altogether.

Therefore, the R&R is ADOPTED in part and DENIED in part as to Gill's testimony. Werner and Home Depot's objections are OVERRULED and their motion to exclude Gill's testimony is DENIED.

**B.     Motions for Summary Judgment**

For dispositive matters, the district judge must determine de novo any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3). A proper objection requires specific written objections to the findings and recommendations in the R&R. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52.

The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24. There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477 U.S. 242, 248 (1986).

Cutting asks the Court to conclude as a matter of law that Werner and Yoke Industrial violated the WPLA and that such violation proximately caused Cutting's injuries. Dkt. 48 at 3. He argues that the fall protection system is unsafe as designed because it does not protect against a knows hazard—the "death grip"—and a reasonable alternative design exists that addresses the hazard and that is not prohibitively more expensive. *Id.* at 19. He further argues that Defendants failed to warn him about hazards associated with the product because they did not warn about the "death grip" hazard or the availability of alternative systems containing anti-panic features. *Id.* at 22.

1    Yoke argues that there is no "death grip" hazard associated with manual rope
2 grabs, only trailing rope grabs. Dkt. 57 at 2–7. It also points to its experts' testimony
3 opining that it would not be possible for Cutting to have opened the rope grab while
4 falling. *Id.* at 6. Werner and Home Depot assert essentially the same arguments. *See* Dkt.
5 58. Cutting replies that Defendants fail to effectively rebut his experts' opinions. Dkt. 70.

6    Werner and Home Depot move for summary judgment, arguing that, as a matter of
7 law, there is no "death grip" hazard in manual rope grabs, that there is no evidence,
8 including Cutting's own testimony, that Cutting grabbed the rope grab during his fall.
9 Dkt. 55. Cutting's response repeats the same arguments as his motion for summary
10 judgment. Dkt. 59. Werner and Home Depot reply that Home Depot should be dismissed
11 because Cutting failed to present evidence that Home Depot was negligent or that the
12 product's manufacturer is insolvent. Dkt. 67 at 2. They also argue that Cutting's numbers
13 are inconsistent because he could not have been one foot from the edge of the roof if the
14 rope grab was 8–10 feet from the peak of the roof because the roof was 18 feet, and the
15 lanyard was 3 feet. *Id.* at 2–3. Based on those numbers, according to Werner and Home
16 Depot, Cutting would have been 5–7 feet from the edge of the roof. *Id.*

17    Yoke also moves for summary judgment, advancing largely the same arguments as
18 Werner. Dkt. 54. It also adds that, if any liability exists, it lies with Werner, not Yoke. *Id.*
19 Cutting essentially repeats the same arguments advanced in his response to Werner and
20 Home Depot's motion and adds that Yoke cannot escape liability simply because it did
21 not design the final product; it can be held liable for designing the rope grab ("the
22 offending component part"). Dkt. 61.

ORDER - 14

The WPLA permits claims against a product manufacturer "if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not reasonably safe as designed or not reasonably safe because adequate warnings or instructions were not provided." RCW 7.72.030(1). To prevail in a WPLA claim for design defect, a plaintiff must show that (1) a manufacturer's product (2) not reasonably safe as designed (3) caused harm to the plaintiff. *Pagnotta v. Beall Trailers of Or., Inc.*, 99 Wn. App. 28, 36 (2000). To prevail on a failure to warn claim, a plaintiff must show that (1) the defendant failed to sufficiently warn, (2) the plaintiff suffered damages, and (3) the defendant's failure to sufficiently warn of the dangers was a proximate cause of the plaintiff's damages. *See, e.g.*, *Little v. PPG Indus., Inc.*, 19 Wn. App. 812, 818 n.3 (1978) (approving the Restatement (Second) of Torts' recitation of the elements).

The R&R identifies disputed issues material to the case that render summary judgment on Cutting's design defect claim inappropriate. Specifically, the R&R points out that the parties dispute whether a "death grip" hazard exists in the rope grab at issue in this case. Dkt. 71 at 17–22. The R&R further concludes that summary judgment on Cutting's failure to warn claim is similarly inappropriate because it depends on the existence of a "death grip" hazard in the rope grab. Dkt. 71 at 22. In other words, there is no duty to warn of a non-existent hazard; thus, to prevail on a failure to warn claim, Cutting must show that the hazard existed. The existence of such a hazard is disputed.

As to proximate cause, the R&R concludes that disputed issues of material fact remain. Specifically, the R&R concludes that the parties disagree as to whether Cutting could have grabbed the rope grab, whether he actually grabbed the rope grab, and

whether grabbing the rope grab resulted in his injuries. Dkt. 71 at 23–24. Finally, the R&R concludes that granting summary judgment in favor of Home Depot for the reasons argued in Werner and Home Depot's reply would be inappropriate because those arguments were raised for the first time in its reply. Dkt. 71 at 25.

Cutting does not object to the R&R's recommendations on the parties' motions for summary judgment. *See* Dkt. 74.

Yoke objects, arguing that Bauer's testimony cannot create a genuine issue of material fact because it relies on "a faulty factual record," specifically the belief that Cutting's lanyard was slack at the time of his fall. *Id.* at 6. Yoke argues that the record shows the lanyard was taut at the time of Cutting's fall and that Bauer's own testing proves that, if the lanyard was taut, Cutting would not have been able to reach the rope grab and the rope grab would not have opened against his weight. *Id.* at 6–8. Yoke further argues that Bauer failed to use any data he collected in forming his opinions. *Id.* at 8. Werner and Home Depot assert the exact same objections as Yoke. Dkt. 73. Cutting argues that Defendants misstate the facts in the record in that Cutting fell toward the rope grab, creating slack in the lanyard and putting the grab within reach. Dkt. 76 at 9–10.

The Court agrees that there are clearly disputed issues of material fact for trial. The parties disagree on the existence of a "death grip" hazard in manual rope grabs generally, and in this rope grab specifically. They also disagree on whether Cutting could have grabbed the rope grab, whether he grabbed the rope grab, and, if he did grab it, whether that caused his fall. The fact that the parties disagree with each other's experts

and believe their respective opinions to be unreliable does not resolve the issue. The jury will be tasked with assessing the experts' credibility and determining what happened.

The R&R is therefore ADOPTED as to the parties' respective motions for summary judgment. The motions, Dkts. 48, 54, and 55, are DENIED.

C.     **Motion to Strike Affirmative Defenses**

Cutting moves to strike the bulk of Defendants' affirmative defenses. Dkt. 48 at 23–26. Defendants concede that the Court should strike their affirmative defense 1, failure to state a claim, because it is not a proper affirmative defense. Dkt. 57 at 7; Dkt. 58 at 24. Yoke also agrees that its affirmative defense 7, statute of limitations, should be stricken. Dkt. 57 at 7. The R&R therefore recommends the Court strike Yoke's affirmative defenses 1 and 7, and Werner and Home Depot's affirmative defense 1. Dkt. 71 at 26.

The R&R also recommends striking Yoke's affirmative defense 9, "industry standard," because it is not an affirmative defense but rather an argument that the product is not defective. *Id.* The R&R recommends denying the motion as to the remaining affirmative defenses because Cutting failed to show the defenses could not succeed under any circumstances. *Id.*

No party objects to the R&R's recommendations. Therefore, the Court ADOPTS the R&R as to Cutting's Motion to Strike. Cutting's Motion to Strike, Dkt. 48, is GRANTED in part and DENIED in part. Yoke's affirmative defenses 1, 7, and 9, and Werner and Home Depot's affirmative defense 1 are STRICKEN.

The Court having considered the R&R, Plaintiff's objections, and the remaining record, does hereby find and order as follows:

(1) The R&R is **ADOPTED in part and DENIED in part**;

(2) Plaintiffs Nicholas Cutting and Kathryn Cutting's Motion for Summary Judgment, Dkt. 48, is **DENIED**;

(3) Defendant Yoke, Inc.'s Motion for Summary Judgment, Dkt. 54, is **DENIED**;

(4) Defendants Home Depot USA, Inc. and Werner Co.'s Motion for Summary Judgment, Dkt. 55, is **DENIED**;

(5) Home Depot Werner's Motion to Exclude Plaintiffs' Expert Witnesses Joellen Gill and Jeremy Bauer is **GRANTED in part and DENIED in part**;

(6) The Cuttings' Motions to Strike the Declarations of Defendants' Expert Witnesses, Dkts. 59, 61, is **DENIED**;

(7) The Cuttings' Motion to Strike Defendants' Affirmative Defenses, Dkt. 48, is **GRANTED in part and DENIED in part**;

(8) Yoke's affirmative defenses 1, 7, and 9, and Werner's affirmative defense 1 are **STRICKEN**; and

(9) The referral to Magistrate Judge Creatura is **TERMINATED** and the parties shall file a joint status report by **December 2, 2022** recommending a date for a Daubert hearing and a new trial date.

//

Dated this 4th day of November, 2022.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge